**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 CR 409 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| ERIC A. BLOOM and | ) | |
| CHARLES K. MOSLEY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Eric A. Bloom and Charles K. Mosley have been charged with 18 counts, including alleged wire fraud in violation of 18 U.S.C. § 1343, investment adviser fraud in violation of 18 U.S.C. §§ 80b-6(1) and (2), 80b-17, and 2, and false statements to an employee benefit plan in violation of 18 U.S.C. §§ 1027 and 2. Bloom seeks an order requiring the government to provide him with a bill of particulars. The Court referred the motion to the magistrate judge, who has issued her report and recommendation ("R&R"). Each party has objected to portions of the R&R. The Court rules as follows.

The indictment accuses Bloom of making false statements and misrepresentations regarding the risks associated with investing with Sentinel, the use of customers' funds and securities, the value of customers' investments and the profitability of investing with Sentinel. In his motion for a bill of particulars, Bloom demands that the government identify each false statement as to each of these categories. The magistrate judge generally agreed with the government that the indictment, together with pretrial discovery already in Bloom's possession, provide sufficient information about the alleged false statements to allow for trial preparation,

avoid prejudicial surprise, and bar a second prosecution for the same offenses. (R&R, Dkt. # 52-1, at 4-5.) The indictment, the R&R points out, identifies misrepresentations in Sentinel's marketing materials regarding the risks associated with investing with Sentinel. (*Id*. at 5.) The indictment also explains that the statements made are false because the defendants 'employed an undisclosed trading strategy for the House Portfolio that included extensive leverage, and a high concentration of the illiquid and high-risk securities, that was inconsistent with the representations to customers." (Indictment, Dkt. # 1, Count 1 ¶ 5.) Further, the indictment describes that part of the undisclosed trading strategy was the use of customers' securities as collateral to allow the defendants to borrow more money than Sentinel otherwise could for use in its high-risk trading strategy. (*Id.*) The indictment states that the false statements about the value of customers' investment and profitability were made on a daily basis by the false and misleading account statements created and distributed to customers. (*Id*., Count 1 ¶ 8.) The statements failed to disclose that the reported returns had actually been "allocated by the defendants, and were not the result of the market performance of the customers' particular portfolios." (*Id*.) The indictment also explains that the accounts were false as to the value of the investments because they failed to disclose that the securities were being used as collateral for undisclosed loans from the Bank of New York. (*Id*.) The statements were also false because they contained incorrect securities and inflated the values of certain securities. (*Id.*)

Furthermore, in its response to the motion for bill of particulars, the government identifies some examples of the documents referred to in the indictment that have already been produced during discovery, including marketing documents, an account-opening document and an example of one of many alleged "seg letters". (R&R, Dkt. # 52-1, at 6-7.) To require more would be to require the government to produce the specific evidence it intends to offer at trial to

prove the charges.  It is well-settled that a defendant does not have a constitutional right to know the details of the evidence the government will use to prove its case.  *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981).

With respect to the allegations in the indictment that Bloom misappropriated securities belonging to customer portfolios by using them as collateral for a loan Sentinel obtained from the Bank of New York, Bloom demands that the government identify the specific securities he is alleged to have misappropriated in this manner, including the date for each such misappropriation.  Bloom's argument is that only a portion of the Bank of New York loan was used for the benefit of its House Account and thus, unless the government can point to any specific "customer security" that was used as collateral for that portion of the loan that was used to benefit the House Account, it cannot prove its case.  Bloom asks that the government be required to identify which securities were pledged improperly for the benefit of the House Account.  The magistrate judge concluded that to the extent Bloom seeks to know what the Sentinel and Bank Of New York documents illustrate concerning which securities were pledged on a daily basis and how, this information is already available to him.  (R&R, Dkt. # 52-1, at 10.) Indeed, he is even aware of what the testimony would be of certain of the Bank Of New York and Sentinel witnesses on this topic from prior discovery in the SEC and bankruptcy proceedings.  (*Id.*)  Bloom's successful opposition to the SEC's summary judgment motion is proof of this.  The court agrees with the magistrate judge, including her conclusion that Bloom is presenting nothing more than a premature closing argument designed to explain that the government cannot prove its case.

Bloom also demands the government identify each corresponding high-risk illiquid collaterized debt obligation ("CDO") allegedly purchased from Firm 1 and Firm 2 for Sentinel's House portfolio. The government responds and the magistrate judge concurs that the defendant's own records show what CDO's Sentinel purchased from these firms as do the pleadings in the civil lawsuits involving those firms in which Bloom was also a party. (*Id*. at 11.) This Court agrees.

As to the allegation that Bloom caused false and misleading account statements to be created and distributed, Bloom demands that the government identify the account statements referred to in these allegations, identify the "incorrect securities" in each such account statement, identify the securities with purported inflated values and the nature and extent of each inflated value, and identify each security in the August 13, 2007 customer statement referenced in Count 20 paragraph 2, and its alleged false valuation. The government responds that the depositions of former employees and telephone recordings that have been produced to Bloom revealed that all of the statements for the time period identified in the indictment are false. In its response to the motion for the bill of particulars, the government identifies as examples three specific daily account statements and objects to providing more information given how long Bloom has been investigating and litigating these issues. (*Id*. at 12.)

The magistrate judge agrees with the government with one exception. The daily account statements referenced in paragraph 8 of Count 1 of the indictment refers to the daily account statements issued in July and August 2007. However, if the government is intending to offer evidence of misleading daily account statements prior to July 2007, the magistrate judge recommends that it be required to identify these account statements by time period or in some other fashion. (*Id*. at 13.) The magistrate judge also recommends that as to all account

statements, the government be required to identify the specific securities that allegedly were "incorrect" or inflated in value on the account statements. The magistrate judge reasons that the government's description of these incorrect securities is that they were "low-quality" or "illiquid" rather than "investment grade." Because these terms are sufficiently ambiguous, they are insufficient in and of themselves to apprise the defendant of the precise nature of the charges against him. (*Id*.) In addition, the magistrate judge explains, neither the SEC nor the CFTC alleged that Sentinel purchased securities that were below "investment grade." (*Id*.)

In its objection to the R&R, the government takes issue with this conclusion arguing that the Sentinel bankruptcy trustee alleged that the individual defendants knew they had purchased or held securities for client portfolios that were neither high quality nor liquid. The trustee's complaint goes on to further describe such securities as "highly-structured private placements that were illiquid and subject to substantial market risk" (Gov't.'s Obj., Dkt. # 53, at 2), and state that "[m]any of these securities were not even initially purchased for customer accounts, but rather were 're-allocated' from the House portfolio to SEG portfolios in order to fill SEG portfolio shortfalls resulting from the Individual Defendants' scheme." (*Id*. (quoting Bankr. Case No. 07-14987, Dkt. # 253, at ¶ 41).)

Attached to this trustee's complaint[1] was a declaration by Ford R. Phillips also describing the illiquid securities as "(i) privately placed Trust Preferred Securities ('TruPS') issued by a publicly-traded mortgage lender; (ii) various debt and equity transfers of securities issued by Collaterized Debt Obligations ('CDOs') whose primary underlying collateral is comprised of TruPS issued by bank and thrift holding companies, insurance companies, and real estate investment trusts ('REITS'); (iii) structured floating-rate corporate notes with esoteric coupon

---

[1] The declarations of Mssrs. Phillips and Moes are attached to the same complaint filed in the associated bankruptcy case number 07-981.

payment terms; and (iv) various mortgage-backed and asset-backed securities." (*Id*.) (quoting Phillips Decl., ¶ 7.) Another declaration attached to the complaint further described the alleged incorrect securities as including "eight highly illiquid 'PRETSL' notes with maturities of thirty years (the low-grade, illiquid securities that had been transferred from the House portfolio to SEG 3)." (Moes Decl., ¶ 75.) Bloom has been represented by his attorneys in the SEC and bankruptcy proceedings and has been litigating these actions for five years. While Bloom states that he settled with the bankruptcy trustee early in the proceedings, he and his counsel still had the benefit of the information identified in the trustee's complaint and the attached declarations.

The amended SEC complaint, alleging similar conduct to that alleged in the bankruptcy complaint and in the instant indictment, describes the improper investments as "collateralized debt obligations, and structured debt instruments with esoteric payment structures and names such as 'Ratchet Snowbears,' 'Ratchet Snowballs,' and 'Pretsls.'" (Gov't.'s Obj., Dkt. # 53, at 4 (quoting N.D. Ill. Case No. 07 C 4684, Am. Compl., Dkt. # 64, at ¶ 51).) The amended SEC complaint also accused Mosley of causing Sentinel to "fabricate private placement securities and cash to list on client statements." (*Id.* (quoting N.D. Ill. Case No. 07 C 4684, Am. Compl., Dkt. # 64, at ¶ 80).) Thus, the government concludes that Bloom and the SEC litigated the issue of the quality of the securities at Sentinel purchased and their liquidity, type and grade through the summary judgment stage of the SEC case.

In its objection, the government further discloses that the securities referred to in paragraphs 3 and 8 of Count 1 and in paragraph 2 of Count 20 include, but are not limited to, tranches of collateralized debt obligations known to the parties by the names ALESCO, KLROS, PRETSL, and TBRNA. The government further discloses that the these illiquid securities

include but are not limited to the eleven securities that are specifically identified in document number 1319 filed in the bankruptcy case, some of which are shown in Sentinel statements:

> 1. August 13, 2007 statement of Barker-Dangerfield Wealth Management Foundation (Bates-number SEC_001-003570) (Count 1 of the indictment);
>
> 2. August 10, 2007 statement of Jump Trading, LLC (Bates-number SEC_001-002935) (Count 7);
>
> 3. July 30, 2007 statement of Ancile Global Diversification Fund, LLC (Bates-number ANCIL_001-000212) (Count 14); and
>
> 4. August 13, 2007 statement of Ravinia Investors, LLC Employee Profit Sharing plan (Bates-numbered RAVIN_001-000339) (Count 20).

As to this aspect of the R&R, the Court agrees with the government. While Bloom may not have litigated the exact issues in the bankruptcy and SEC cases that are present in the instant case, he has the benefit of information provided to him during the pendency of those cases. Moreover, Bloom's statement that he has no idea what securities the government contends had "incorrect" or inflated values is disingenuous given his various management roles at Sentinel including, as the government notes, "part owner, chief operating officer, chief trader, chief financial officer, and its compliance officer." (Gov't's Resp. Bloom's Obj., Dkt. # 57, at 1.)

Certainly with the additional disclosures contained in the government's response, Bloom now has a sufficient description in specifics and by categories of the alleged "illiquid," "below investment grade" and "incorrect" securities referenced in the indictment to properly prepare a defense. Bloom asserts that the "government's provision of these additional particulars illustrates that it knows exactly which securities are at issue, but simply refrains to identify them." (Bloom's Resp. Govt's Obj., Dkt. # 58-1, at 2.) But, as already noted, a defendant does not have a constitutional right to know the details of the evidence the government will use to

prove its case. *Kendall*, 665 F.2d at 135. The government has provided sufficient detail to allow Bloom to prepare for trial and avoid prejudicial surprise.

In summary, the Court overrules Bloom's objections and adopts the report and recommendation [52-1] of the magistrate judge as modified herein.

**Date**: February 5, 2013

_____
**Ronald A. Guzman**
**United States District Judge**